IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:25CV11-FDW

| CHRISTOPHER MCINTOSH, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) ORDER |
| FRANK BISIGNANO, Commissioner of Social Security, | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court upon Plaintiff's Motion for Summary Judgment (Doc. No. 8) and the Commissioner's Motion for Summary Judgment (Doc. No. 11). Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

### I. Administrative History

On August 25, 2021, Plaintiff Christopher McIntosh filed his application for disability insurance under Title II and supplemental security income under Title XVI of the Social Security Act alleging a disability onset date of August 15, 2018. After Plaintiff's claim was denied both initially and on reconsideration, he requested and was granted a hearing before Administrative Law Judge Robin Barber ("the ALJ"). At the hearing, Plaintiff amended his alleged onset date to October 29, 2021.[1] The ALJ issued a decision on November 3, 2023, that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision

---

[1] This resulted in a withdrawal of his request for Title II benefits, as this was after his date last insured of June 30, 2019.

the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, Plaintiff timely filed this action, seeking judicial review of the ALJ's decision.

## II. Factual Background

In her decision, the ALJ at the first step determined that Plaintiff had not engaged in substantial gainful activity since his amended alleged onset date. (Tr. 21). At the second step, the ALJ concluded that Plaintiff has the following severe impairments: degenerative disc disease/arthropathies, osteomyelitis, depression, and anxiety. (*Id.*). At the third step, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 22).

The ALJ then found that Plaintiff has the residual functional capacity to perform light work except for the following limitations:

> he can stand and/or walk for 6 hours out of an 8-hour workday, with unlimited sitting but should be allowed to change positions every 30 minutes while remaining on task. He is able to lift/carry, push and/or pull 10 pounds frequently and 20 pounds occasionally. He is able to occasionally climb ropes, ladders, and scaffolds, frequently climb ramps and stairs, and frequently balance (as defined in DOT/SCO), stoop, kneel and crouch, but has no limitation on crawling. The claimant is able to understand, remember and carry out simple instructions with normal breaks on a sustained basis. He is able to adapt to occasional changes in a routine work setting. He is able to have occasional interaction with the public not involving adversarial-type activities (such as addressing customer complaints).

(Tr. 24). Based on these limitations, the ALJ found in the fourth step that Plaintiff is not capable of performing his past relevant work as a garbage collector and laborer. (Tr. 29). At the fifth step, however, the ALJ concluded that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 29-30). Accordingly, the ALJ found that Plaintiff was not disabled under the Act. (Tr. 30).

**III.    Standard of Review**

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson*, 402 U.S. at 400. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. *Hays*, 907 F.2d at 1456.

**IV.    Discussion**

Plaintiff has made the following assignments of error: 1) The ALJ erred in her analysis of Plaintiff's pain and consequently erred in her summary assessment of contested and relevant functions; 2) the ALJ erred in her medical opinion analysis; and 3) the ALJ erred by failing to consider the effects of Plaintiff's frequent medical treatment on his absenteeism when assessing the RFC.

As part of his first assignment of error, Plaintiff argues that the ALJ improperly relied on certain normal physical exam findings to disregard Plaintiff's asserted need for an assistive device for walking. In his testimony, Plaintiff stated he could no longer work because of ongoing lower back pain, sciatic nerve pain in both legs, and drop foot on the right side. (*See* Tr. 43-44). He had spent about 49 weeks out of a year and a half in the hospital due to a series of infections in his spine. (*See id.*). He can hardly do anything that he used to do anymore, must walk with a cane, and after about five minutes he must sit down. (*See* Tr. 44). He could not stand for more than five

3

minutes straight either. (*See* Tr. 46). He usually sits in his recliner and elevates his legs after being up on his feet, and after about 15 minutes, he is able to get up again. (*See* Tr. 46). He uses his cane for balance and support as it helps with his back pain and lower extremity ("LE") pain. (*See* Tr. 47). He also has a walker that he used. (*See* Tr. 51). He does not use a regular chair for sitting but needs a recliner due to pain. (*See* Tr. 53). This testimony is consistent with his function reports to the SSA. (*See*, *e.g.*, Tr. 295; 313).

There are extensive physical therapy records from 2021 which document Plaintiff's use of a cane and a rolling walker. In April of 2021, the PT notes from his hospital stay reflect that he was using two canes for walking with his single point cane ("SPC") being classified as a DME.[2] (*See* Tr. 917). The following month, Mr. McIntosh received training for the use of a rolling walker. (*See* Tr. 914). Upon testing he could walk for 400 feet with a rolling walker, and his right foot was noted to drag some due to his right foot drop; his gait was also shuffling and had a decreased cadence. (*See* Tr. 897). He had deficits in gait training, standing balance, and functional endurance. (*See* Tr. 898). Over the course of several treatments, he was noted to have an antalgic gait, decreased cadence, and decreased trunk extension, and he was continued on a rolling walker by PT, which he was observed using with his right foot clearing during the swing phase despite the drop. (*See*, *e.g.*, Tr. 891-92; 893; 895).

In June of 2021, Mr. McIntosh's cane was again noted to be his home DME, and before his recent hospitalization, he had been able to ambulate and perform daily activities with the use of his SPC. (*See* Tr. 1051). On physical examination, the PT noted that his pain limited his

---

[2] *See* Medicare.gov, Durable Medical Equipment, https://www.medicare.gov/coverage/durable-medical-equipment-dme-coverage (last visited February 9, 2026) (explaining that DME is defined as equipment which is used for a medical reason, can withstand repeated use, is typically only useful for someone who is sick or injured, is used in the home, and the use is expected to last at least 3 years).

4

functioning and impaired his ROM. (*See* Tr. 1054). He was still using a rolling walker. (*See* Tr. 1051; 1055).

When he was back in the hospital in September of 2021, Mr. McIntosh was again noted to be functioning with a cane as his DME prior to his recent hospital admission. He was now unable to ambulate for more than 15 feet without a rolling walker, and his gait deviations included a wide base of support. (*See* Tr. 1219). He was found to "require[] use of 2ww ("wheeled walker") for appropriate stability in standing and ambulating outside room." (*See* Tr. 1219). In October of 2021, PT observed that he was independent from the therapist (he did not need a 'spot' for support in case he fell) while using a rolling walker for ambulation so he was discharged. (*See* Tr. 1212).

An MRI in July 2022 revealed moderate to severe bilateral neural foraminal narrowing at L2-3, L4-5, and osteomyelitis at L5-S1. (Tr. 26). At his consultive examination with NP LeAnne Roberts in August of 2022, Plaintiff reported use of a cane for both standing and walking sometimes in the home but always when out of the home. (Tr. 1296). The cane was used for support due to his back and hip problems. (*Id.*).

At the hearing, the VE testified that if the Plaintiff needed a cane to ambulate for more than five minutes/a couple hundred feet, that work at the light level of exertion would be precluded. (Tr. 58).

The record is replete with references to Plaintiff's chronic pain and use of an assistive device. However, the ALJ failed to address the PT records described above and stated in a conclusory fashion that there was "no medically documented need for an assistive device." (Tr. 22). The ALJ reported that the record showed that Plaintiff's physical exams revealed "mostly normal findings," including normal range of motion, normal straight leg test, normal strength and sensation (despite diffuse tenderness on occasion). (Tr. 25). Plaintiff did have moderate difficulty

5

in standing up from a chair, low back pain with internal rotation of his hips, and diffuse tenderness in his lumbar spine. (*Id.*). He could not walk on heels, and he squatted with difficulty, but he could do normal tandem walking, normal toe walking, normal finger nose test, and negative Romberg test. (*Id.*). He walked with an antalgic gait and station with a cane on the left side. (*Id.*). The Plaintiff's gait was the same with or without the cane. (*Id.*).

The ALJ "must build an accurate and logical bridge from the evidence to [her] conclusions." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020). The Court finds that the ALJ herein failed to do so. The ALJ found that the Plaintiff could stand and/or walk for 6 hours out of an 8-hour workday but fails to adequately consider whether he required the use of an assistive device. The ALJ merely made a conclusory statement that there was no medically documented need for an assistive device and cited to certain normal physical exam findings (such as normal strength)[3] and NP Roberts' observation that Plaintiff walked with an antalgic gate with and without a cane. The ALJ's discussion of the medical evidence failed to mention extensive PT records documenting the use of a cane and walker.

Based upon the foregoing, the Court finds that the decision of the ALJ is not supported by substantial evidence. Plaintiff's Motion for Summary Judgment will be **GRANTED**, the Commissioner's Motion for Summary Judgment will be **DENIED**, and the decision of the Commissioner will be **VACATED and REMANDED** for a new hearing and decision not inconsistent with this Order.

The Court explicitly notes that in ordering remand pursuant to sentence four of 42 U.S.C. § 405(g), the Court does not take a position on the merits of Plaintiff's application for disability

---

[3] An assistive device can be necessary to ". . . reduce pain when walking . . .." *See* SSR 96-9p, 1996 WL 374185, at *7; *see also Johnson v. Comm. of Soc. Sec.*, 2023 WL 8825295, at *1 (4th Cir. 2023) (holding that an AD can be necessary to reduce pain from weightbearing; weakness is not required).

benefits, nor does the Court express any opinion as to Plaintiff's other assignments of error. The Court finds the ALJ's decision deficient for the reasons stated herein, and consequently, that decision as written cannot stand. *See, e.g.*, *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision[.]" (citations omitted)). In declining to address the other assignments of error in dicta,[4] the Court notes that remand here provides the opportunity for the ALJ to modify any prior basis for the prior decision in the new decision issued upon remand. "Under § 405(g), 'each final decision of the Secretary [is] reviewable by a *separate* piece of litigation,' and a sentence-four remand order '*terminate[s]* the civil action*' seeking judicial review of the Secretary's final decision." *Shalala v. Schaefer*, 509 U.S. 292, 299 (1993) (alteration in original) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 624-25 (1990)).

**IT IS THEREFORE ORDERED** that

(1) Plaintiff's Motion for Summary Judgment is **GRANTED**, and the Commissioner's Motion for Summary Judgment is **DENIED**;

(2) The decision of the Commissioner, denying the relief sought by Plaintiff, is **VACATED** and this action is **REMANDED** to the Commissioner for a new hearing and decision not inconsistent with this Order; and

This action is **DISMISSED.**

---

[4] The Court recognizes the Fourth Circuit, on occasion, will address additional assignments of error notwithstanding an order to remand. *See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 663 (4th Cir. 2017) (noting "[n]ormally, our opinion would end here, and we would not go beyond ordering the ALJ to apply the regulation that it failed to observe" but then summarily directing the ALJ to provide a more detailed explanation as to other errors "in the interest of judicial efficiency"); *Bird*, 699 F.3d at 343 (citing *Sharpe v. Dir., Office of Workers' Comp. Programs*, 495 F.3d 125, 134 n. 16 (4th Cir. 2007) (providing instructions for ALJ to follow on remand regarding issues not dispositive on appeal); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984) ("Since the case must be reconsidered by the Secretary, we do provide some guidance as to a matter very likely to arise at the hearing which will occur.")).

Signed: February 11, 2026

_____
Frank D. Whitney
Senior United States District Judge